UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

DEMAJIO J. ELLIS,

    Plaintiff,

    v.

SERGEANT PRYOR, et al.,

    Defendants.

CAUSE NO. 3:16CV620-PPS/MGG

OPINION AND ORDER

Demajio J. Ellis is a prisoner who is proceeding without a lawyer in this case against two correctional officers. He was granted leave to proceed "against Sergeant Pryor in his individual capacity for monetary damages for using excessive force against him on June 10, 2016," and leave to proceed "against [Sergeant] Flakes in her individual capacity for monetary damages for failing to intervene in Sergeant Pryor's use of excessive force on June 10, 2016." ECF 10 at 4. The Defendants have filed a motion for summary judgment, which is now fully briefed. ECF 77, ECF 83.

Factual Background[1]

On June 10, 2016, Ellis, who was housed at the Westville Correctional Facility, refused to remove his arms from the cuff port in his cell. ECF 78-1 at 3, 5; ECF 83 at 2.

---

[1] In response to the Defendants' "Statement of Material Facts Not in Dispute" (ECF 78 at 2–3), Ellis filed a "Statement of Genuine Disputes Precluding Summary Judgment" (ECF 83 at 2–5) and a "Declaration in Support of Opposing Summary Judgment of Defendants" (ECF 84). In his Declaration, which is sworn under the penalty of perjury, Ellis states, "Everything mentioned in my response opposing summary judgment [is] true, and correct, along wit[h] the information in this Declaration." ECF 84 at 1. For purposes of ruling on this motion, I will consider the facts asserted in Ellis's Statement of Genuine Disputes as if they were set forth in his sworn Declaration.

Ellis states he was "peacefully requesting" to speak with a shift supervisor; he insists he made no threats to anyone. ECF 83 at 2. What's more, he tells me that he posed no risk of harm to himself or anyone else. *Id*. Nonetheless, suddenly and for reasons that are unclear (if one believes Ellis), a team of officers including Sergeant Flakes and Sergeant Pryor was deployed to resolve the situation. ECF 78-1 at 5. For their part, the defendants offer no evidence that Ellis was posing a risk to anyone during the encounter. And in all events, as I just noted, Ellis disputes any such claim.

Sergeant Flakes states that Ellis was given several additional commands to comply once the team arrived, but he refused. ECF 78-1 at 7. Ellis, on the other hand, attests that Sergeant Pryor "began to get hostile quick" as soon as he arrived on the scene. ECF 83 at 2. According to Ellis, although the officers had "regular" pepper spray on their persons, Sergeant Pryor directed Sergeant Flakes to "go get the strong spray." *Id*. at 3; ECF 84 at 1. She did so and returned with the "'big' can that look[s] like a 'fire distrigusher' (sic) that is meant for a crowd of people in riots only . . .." ECF 83 at 3. For purposes of this motion, it is undisputed that Sergeant Pryor sprayed Ellis with the pepper spray for approximately "4 to 6 seconds or more." *Id*.; ECF 84 at 1; *see also* ECF 78 at 3 n.2. Ellis had a sheet over his head during this time. ECF 78-1 at 5.

According to Sergeant Pryor, another order was given for Ellis to release the cuff port, and, when he did not comply, he deployed a taser onto Ellis's right wrist. ECF 78-1 at 5. Ellis then released the cuff port, and another officer pushed his hands back into his cell. *Id*. It is unclear how much time elapsed between the use of the pepper spray and the deployment of the taser, but Ellis suggests that it was approximately one minute

2

and states that the taser was deployed "without warning" and "for no reason." *Id*. at 4; ECF 83 at 3. It is undisputed that the officers never physically attempted to close the cuff port until after the taser was deployed. ECF 78-1 at 8; ECF 83 at 3. Ellis claims that he heard Sergeant Pryor laughing about the incident afterwards and that he has had "issues" with Sergeant Pryor in the past. ECF 83 at 3; ECF 84 at 2. Ellis was left suffocating in his cell alone for approximately one hour until he was removed and "decontaminated." ECF 83 at 3. The spray made him "burn," his skin was swollen, and a small scar is still visible on Ellis's wrist where he was struck by the taser. ECF 78 at 3 (citing ECF 9 at 5).

## Discussion

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Not every dispute between the parties makes summary judgment inappropriate; "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id*. To determine whether a genuine dispute of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010)

3

*Excessive Force Claim Against Sergeant Pryor*

Jails are dangerous places, and security officials are tasked with the difficult job of preserving order among inmates. *Lewis v. Downey*, 581 F.3d 467, 476 (7th Cir. 2009). It is important that prisoners follow orders given by guards. *Id*. at 476-77 (citing *Soto v. Dickey*, 744 F.2d 1260, 1267 (7th Cir. 1984)). To compel compliance—especially in situations where officers or other inmates are faced with threats, disruption, or aggression—the use of summary physical force is often warranted. *Id*. at 477 (citing *Hickey v. Reeder*, 12 F.3d 754, 759 (8th Cir. 1993)). Neither the use of a taser nor pepper spray against an inmate under such circumstances constitutes a per se violation of the Eighth Amendment. *See id.* at 475–76; *see also Soto*, 744 F.2d at 1271.

But this is not to say that such justification exists "every time an inmate is slow to comply with an order." *Lewis*, 581 F.3d at 477. Accordingly, the "core requirement" for any excessive force claim in this context is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009) (internal quotation marks and citation omitted). "A court should examine a variety of factors in conducting this inquiry, including the need for an application of force, the relationship between that need and the force applied, the threat reasonably perceived by the responsible officers, the efforts made to temper the severity of the force employed, and the extent of the injury suffered by the prisoner." *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000). The appropriateness of the use of force is determined by an examination of the particular facts and circumstances of each case. *Soto*, 744 F.2d at 1270.

4

Here the Defendants argue that the use of force was performed in good faith, rather than with a malicious or sadistic intent. They stress the fact that Ellis refused to comply with orders to remove his hands from the cuff port, and contend that the amount of force employed in response was necessary, reasonable, and *de minimis*. As an initial matter, it is a little hard to swallow that the force here was tiny. If one believes Ellis, it is anything but that. I note that the Seventh Circuit has held that "the use of a taser gun against a prisoner is more than a *de minimis* application of force." *Lewis*, 581 F.3d at 475. And because Ellis has presented evidence that he posed no threat to the officers or anyone else, if that is believed, this would tend to show that Sergeant Pryor employed the pepper spray in a manner greater than necessary. *See e.g. Soto*, 744 F.2d at 1270 (noting that the use of "mace or other chemical agents in quantities greater than necessary" violates the Eighth Amendment).

As noted, the core issue is whether the use of force demonstrated actual malice or a sadistic purpose on the part of Sergeant Pryor. Many of the facts relevant to this inquiry are disputed, and those disputes must be resolved in Ellis's favor at this stage. For example, as to necessity, it is true that Ellis admits he refused to remove his hands from the cuff port. However, the Defendants' suggestion that every time an order is disobeyed, it must result in the use of force is an overly broad interpretation of the law. *See Lewis*, 581 F.3d at 477. According to Ellis's version of events, he was peacefully requesting to speak with a shift supervisor but was not given an adequate opportunity to comply with the order because Sergeant Pryor immediately became hostile when he arrived on the scene. In other words, if one were to believe Ellis, he was posing no

threat to anyone when he was suddenly attacked with a chemical agent. Additionally, after he was pepper sprayed, he was summarily electrocuted with a taser without warning -- all the while continuing to pose no threat of harm to anyone. The Defendants, on the other hand, assert that Ellis was given multiple opportunities to comply and that specific warnings were given before both the pepper spray and the taser were deployed. In other words, there is a simple dispute of fact over whether Ellis was warned of the impending attack.

There are similar disputes of fact over the threat perceived by the officers. Ellis insists that his actions were neither aggressive nor threatening; the Defendants, however, disagree. "In cases upholding the use of taser guns, the victims have been violent, aggressive, confrontational, unruly, or presented an immediate risk of danger to themselves or others." *Lewis*, 581 F.3d at 477. As Ellis tells the story, the type of behavior deemed troublesome enough to warrant the application of such force is nonexistent in this case. *See id.* at 477–78 (collecting cases and emphasizing the absence of threats or agitation, the short passage of time between the order given and the use of force, and the lack of warnings regarding the failure to comply).

What's more, the amount of force used and whether there were efforts made to temper it are also relevant factors to consider in my analysis. According to Ellis, Sergeant Pryor specifically sent Sergeant Flakes to get a stronger version of the pepper spray and then used it on him, despite having a milder version of the spray already on his person. While the pepper spray may not technically have been dangerous in quantity, it is reasonable to infer malintent on the part of the officers if Ellis's assertions

6

are credited. *See e.g. Soto*, 744 F.2d at 1270 (recognizing use of chemical agents in quantities greater than necessary violates the Constitution). And then, even if the initial application of pepper spray was reasonable, Ellis's contention that the taser was deployed swiftly thereafter and without warning suggests that the total amount of force may have been disproportionate to the threat posed. *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 863 (7th Cir. 2010) (noting that "[f]orce is reasonable only when exercised in proportion to the threat posed" and that it "becomes increasingly severe the more often it is used"). If Ellis is believed, there was no real effort by the officers to deescalate the situation as it progressed. *See id*. In sum, summary judgment cannot be granted when there are factual disputes of the kind present here.

Nothing in *Outlaw v. Newkirk*, 259 F.3d 833, 839–40 (7th Cir. 2001), a case relied upon by the defendants, mandates a different result. In *Outlaw* the lack of injury was partially dispositive of the plaintiff's claim. But Ellis isn't required to show that he suffered a serious injury or long-term pain; rather, it's the "pain [itself], not injury, that is the touchstone of an Eighth Amendment claim." *Hendrickson*, 589 F.3d at 891 (internal quotation marks and citation omitted). It is undisputed that Ellis has a scar on his wrist. More importantly, he declares he suffered for an hour in his cell after the encounter—which included being pepper sprayed and shocked by a taser. If believed by a jury, this could constitute an injury sufficient to support an Eighth Amendment violation. *See id*. (the jury appropriately credited the plaintiff's assertion that he "felt a lot of pain" when he was thrown to the ground as proof of actionable injury); *see also Lewis*, 581 F.3d at 475

7

(noting that "one need not have personally endured a taser jolt to know the pain that must accompany it").

In sum, as detailed above, after consideration of the relevant factors, I find that there are disputed questions of fact surrounding the events at issue that preclude summary judgment on Ellis's excessive force claim against Sergeant Pryor. *See Lewis*, 581 F.3d at 476-80 (vacating grant of summary judgment and remanding on issue of whether officer acted in good faith or whether he acted maliciously and wantonly when he used force on plaintiff because disputes remained as to the officer's state of mind).

*Failure to Intervene Claim Against Sergeant Flakes*

"[O]fficers who have a realistic opportunity to step forward and prevent a fellow officer from violating a plaintiff's rights through the use of excessive force but fail to do so" can be liable under § 1983. *Fillmore v. Page*, 358 F.3d 496, 505–06 (7th Cir. 2004) (citations omitted). That said, when there is no underlying constitutional violation, a plaintiff cannot prevail on a failure to intervene claim. *Id*. at 506 ("Simply put, there was no constitutionally impermissible failure to intervene because there was no violation that compelled intervention."). Here the only argument that Sergeant Flakes is entitled to summary judgment is that Sergeant Pryor never used excessive force on Ellis that would have triggered the obligation for Sergeant Flakes to intervene. *See* ECF 78 at 9. This argument fails, however, as I've found that the contradictory record prevents determination of the excessive force question at this stage. Because the Defendants have presented no other basis for granting summary judgment as to Sergeant Flakes, I decline to do so.

*Qualified Immunity*

"Qualified immunity protects government officials from civil liability when performing discretionary functions so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Alvarado v. Litscher*, 267 F.3d 648, 652 (7th Cir. 2001) (internal quotation marks and citation omitted). To overcome a qualified immunity defense, "a plaintiff must show the deprivation of a constitutional right, and must also show that the right was clearly established at the time of the violation." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (citing *Alvarado*, 267 F.3d at 652). "A right is clearly established when existing precedent has 'placed the statutory or constitutional question beyond debate.'" *Howell v. Smith*, 853 F.3d 892, 897 (7th Cir. 2017) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). The plaintiff does not need to point to a case "on all fours" with the defendant's alleged misconduct; rather, there must simply be "settled authority that would cause him to understand the illegality of the action." *Id*. (citations omitted).

Here, as outlined above, factual disputes exist as to whether the Defendants' conduct violated Ellis's Eighth Amendment rights. *See Lewis*, 581 F.3d at 477 ("As should be clear from the preceding discussion, the answer to the first part of this [qualified immunity] test hinges on the resolution of fact questions that are now in the jury's hands."); *see also Mordi v. Zeigler*, 770 F.3d 1161, 1164 (7th Cir. 2014) ("The court cannot resolve disputed issues of fact when it addresses [whether the facts alleged describe a violation of a protected right in the context of a qualified immunity analysis] because the ordinary rules governing summary judgment apply in that situation.").

As to the second element, the court in *Lewis* went on to tackle the issue of whether the right was clearly established at the time of the alleged misconduct in circumstances similar to the scenario described here and concluded that it was. *Lewis*, 581 F.3d at 479 ("We hold that a reasonable officer would understand that employing a taser gun under the version of the facts that [the plaintiff] has described would violate the prisoner's constitutional rights."). The court cited to *Soto*, 744 F.2d at 1270–71, noting that, while chemical agents and other types of force could be reasonably necessary to prevent riots, to subdue prisoners, or to compel compliance with orders, "such force could not be 'exaggerated or excessive' and should generally follow 'adequate warning[s].'" *Lewis*, 581 F.3d at 479.

Here, Ellis claims that Sergeant Pryor went out of his way to spray him with a stronger version of the pepper spray than was necessary soon after he arrived on the scene, even though Ellis presented no threat or risk of harm. He asserts that Sergeant Pryor then used a taser on him almost immediately with absolutely no warning. *See id*. ("If these truly are the facts, no reasonable officer would think that he would be justified in shooting [the prisoner] with a taser gun. Accepting [the prisoner's] story, we conclude that [the officer] is not entitled to qualified immunity."). Thus, in light of the foregoing, Ellis cannot avoid trial on grounds of qualified immunity.

ACCORDINGLY:

Defendants' motion for summary judgment (ECF 77) is DENIED.

Plaintiff's motion for a copy of the docket (ECF 89) is GRANTED, and the clerk is DIRECTED to send Demajio J. Ellis a copy of the docket sheet along with this order.

SO ORDERED on January 16, 2020.

/s/ Philip P. Simon
JUDGE
UNITED STATES DISTRICT COURT